UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENNIS BARNETT and WILLIAM BARNETT,<br><br>    Plaintiffs,<br><br>    v.<br><br>T.D. ESCROW SERVICES, INC., et al.,<br><br>    Defendants. | NO. C05-799JLR<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on Defendants Homecomings Financial Network, Inc.'s ("Homecomings") and Wilshire Credit Corporation's ("Wilshire") motion to dismiss for judgment on the pleadings (Dkt. # 23). Having considered the documents filed in support of this motion and lacking any opposition, the court GRANTS Defendants' motion.

## II. BACKGROUND

In January 1989, Plaintiff Dennis Barnett purchased a residence in Marysville, Washington. As part of the purchase, Barnett executed a promissory note for $69,000 and a deed of trust securing the loan. Over the next decade, the deed of trust was reassigned multiple times, most recently to Homecomings. In fall 2001, Barnett fell behind in his loan payments to Ocwen, the loan servicing agent at that time, and Ocwen declared default, threatening to foreclose unless Barnett paid $49,603.05 to reinstate the loan. Barnett

ORDER- 1

borrowed $40,000 from his father and secured a written agreement from Ocwen that paying such an amount would reinstate the loan.

In early 2002, Ocwen transferred servicing rights on Barnett's loan to Wilshire. Although Barnett made his February 2002 payment to Ocwen and his March 2002 payment to Wilshire, Wilshire returned his March check and claimed default. On March 27, 2002, Defendant T.D. Escrow Services ("T.D. Escrow") issued a Notice of Trustee's Sale alleging Barnett had missed 15 months of payments. Barnett successfully stopped the foreclosure proceedings, made two more payments to Wilshire, and sent a letter requesting clarification of his account status in light of his previous $40,000 payment to Ocwen. Although it is unclear whether Wilshire provided such clarification, Wilshire claimed that Barnett defaulted again in January 2003 by allegedly failing to make any payments during 2002.

Consequently, Barnett and his father[1] filed suit against Homecomings, Wilshire, Ocwen, and T.D. Escrow alleging wrongful acts, usury, and violations of the Washington Consumer Protection Act ("WCPA"), Real Estate Settlement Practice Act ("RESPA"), and Fair Debt Collection Practices Act ("FDCPA"). Homecomings and Wilshire have jointly filed the current motion to dismiss all of Plaintiffs' claims. Plaintiffs have failed to file any papers in opposition to Defendants' motion.[2]

### III. DISCUSSION

**A. Legal Standard**

When considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the court assumes that the material facts as pleaded are true and draws all inferences in favor of the non-moving party. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d

---

[1] Barnett's father ultimately refinanced the loan and paid it off in February 2004.

[2] The court notes that Plaintiffs' failure to oppose this motion "may be considered by the court as an admission that the motion has merit." W.D. Wash. Local Rule CR 7(b)(2).

ORDER- 2

1542, 1550 (9th Cir. 1989); Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.3d 228, 230 (9th Cir. 1989). Judgment on the pleadings is proper when the moving party demonstrates that there are no remaining issues of material fact and that it is entitled to judgment as a matter of law. Hal Roach, 896 F.2d at 1550. Documents considered by the court that are attached to the complaint and incorporated by reference will not convert a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings into a Fed. R. Civ. P. 56 motion for summary judgment. Fed. R. Civ. P. 10(c); Hal Roach, 896 F.2d at 1555, n.19; Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**B.   Accounting**

Plaintiffs allege that "there was no current amount in default and that the foreclosure was wrongful," or alternatively, that any amount owed "was less than the amount or number of payments claimed." Compl. at ¶¶ 4.2-4.3. Consequently, Plaintiffs seek declaratory judgment in the form of an accounting of the amount owed under RCW §§ 61.24 and 7.24. To state a claim for accounting, Plaintiffs must allege that (1) a fiduciary relationship exists between the parties, or that the account "is so complicated that it cannot conveniently be taken in an action at law," (2) Plaintiffs previously demanded an accounting from Defendants, and (3) Defendants refused. State v. Taylor, 362 P.2d 247, 253 (Wash. 1961) (quoting Seattle Nat'l Bank v. Sch. Dist. No. 40, 55 P. 317, 319 (Wash. 1898)). Defendants Homecomings and Wilshire argue that Plaintiffs' accounting claim must be dismissed for failure to sufficiently allege all three elements.

Accepting Plaintiffs' factual allegations as true and drawing all inferences in their favor, the court finds that Plaintiffs have failed to demonstrate the first element of an accounting claim. In Washington, a lender is not a fiduciary of its borrower unless a special relationship exists between the parties. Miller v. U.S. Bank of Wash., N.A., 865 P.2d 536, 543 (Wash. Ct. App. 1994). Plaintiffs fail to allege any facts suggesting such a special

ORDER- 3

relationship exists.  Further, nothing in the complaint suggests that Plaintiffs' account is particularly complicated.  Indeed, Plaintiffs' allegations describe a typical loan arrangement where a dispute developed over missed payments.  The court finds that Plaintiffs have failed to allege sufficient facts to satisfy the first element of an accounting claim and refrains from considering whether Plaintiffs' complaint satisfies the remaining elements of an accounting claim.

**C.    Usury**

Plaintiffs allege that Wilshire (and Ocwen) charged them interest in excess of the lawful maximum rate and as a result, all of the Defendants are guilty of usurious conduct.[3] Defendants contend that Plaintiffs' usury claim is time-barred under RCW § 19.52.032, and in the alternative, that Plaintiffs' claim is preempted by federal law.  Although Defendants misstate the applicable statute of limitations, they correctly argue that Plaintiffs' usury claim is preempted by federal law.[4]  The federal Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA") exempts from state laws expressly limiting interest rates, mortgages and loans that are (1) "secured by a first lien on residential real property," (2) made after March 31, 1980, and (3) "federally related." 12 U.S.C. § 1735f-7a(a)(1); Brown v. Investors Mort. Co., 121 F.3d 472, 475 (9th Cir. 1997).

---

[3] Previously, the court found that Plaintiffs' usury claim against Ocwen failed because Ocwen charged a lawful interest rate.  Order, Dkt. # 25 at 3-4.

[4] Despite the six-month statute of limitations established in RCW § 19.52.032 for usury claims, Washington courts have long recognized that "a right of action exists for the recovery of usurious interest in addition to that provided by statute, and that this remedy has a 3-year limitation period." Flannery v. Bishop, 504 P.2d 778, 781 (Wash. 1972).  Given that Plaintiffs paid off their loan in February 2004 and filed suit 13 months later, Plaintiffs' usury claim is timely.  See RCW § 19.52.032 (providing that statute of limitations commences the earlier of six months after final payment becomes due, or six months after the principal is paid in full).

ORDER- 4

Here, Plaintiffs' complaint alleges that they obtained a purchase money mortgage for a residential home on January 5, 1989, satisfying the first two elements. Compl., at ¶¶ 3.1-3.2. By alleging a RESPA claim, Plaintiffs' complaint indirectly establishes the third element, "federally related mortgage," because RESPA governs "federally related mortgage loans" which are defined substantially the same under DIDMCA and RESPA. Compare 12 U.S.C. § 1735f-5(b) (DIDMCA), with 12 U.S.C. §§ 2602, 2605 (RESPA). Thus, assuming all of Plaintiffs' allegations are true, Plaintiffs' usury claim is preempted by federal law.

**D.    Washington Consumer Protection Act**

To state a claim under the WCPA, Plaintiffs must allege (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) that injures Plaintiffs' business or property, and (5) bears a causal link between the act and Plaintiffs' damages. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 533 (Wash. 1986). Assuming all of Plaintiffs' allegations are true, the court finds that Plaintiffs fail to state a claim under the WCPA. Although Plaintiffs allege generally that "Defendants' conduct" violates the WCPA, Plaintiffs fail to specify what conduct by Homecomings or Wilshire constitutes an unfair or deceptive act. Rather, Plaintiffs focus their WCPA claim solely on T.D. Escrow's alleged violation of the "statute regarding foreclosure procedures RCW 61.24 which is in turn a violation of RCW 19.86." Compl. at ¶ 6.3. Thus, the court finds that Plaintiffs have failed to allege sufficient facts demonstrating that Homecomings or Wilshire committed an unfair or deceptive act, and refrains from considering whether Plaintiffs' complaint satisfies the remaining elements of a WCPA claim.[5]

---

[5] Further, the basis for Plaintiffs' damages claim under the WCPA is less than clear given that Defendants threatened, but never foreclosed on Plaintiffs' home, and that Plaintiff William Barnett refinanced the loan and paid it off prior to filing suit.

ORDER- 5

E.  **Real Estate Settlement Practices Act**

Plaintiffs allege that Wilshire (and Ocwen) violated RESPA by failing to honor "proper requests for information by Dennis Barnett about loan balances, and requests for acknowledgment of amounts paid." Compl., at ¶ 7.2. RESPA requires federally related mortgage loan servicers, such as Wilshire, to take certain actions when a borrower sends a "qualified written request." 12 U.S.C. § 2605(e)(1)(A). To qualify, a borrower's request must be (1) in writing, (2) state the borrower's name and account, and (3) state the reasons the borrower believes the account is in error. Id. Plaintiffs' complaint references and attaches three letters that Plaintiff Dennis Barnett sent Wilshire, which may be properly considered by this court without converting Defendants' motion for judgment on the pleadings into a motion for summary judgment. Fed. R. Civ. P. 10(c); Hal Roach, 896 F.2d at 1555, n.19; Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Of these three letters, only the one sent on June 14, 2002 constitutes a "qualified written request."[6] Compl., Exh. B.

Failure to respond to a borrower within 60 days of receiving a qualified written request exposes a loan servicer to potential liability for actual damages and up to $1,000 in additional damages "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1). The court finds that Defendant Wilshire's failure to respond to the June 14, 2002 letter exposes it to liability for actual damages (if any), but not to additional damages. Although Defendants argue that Plaintiffs' complaint fails to allege any actual damages, the court finds otherwise based on Plaintiffs' allegation seeking "damages for violation of the RESPA including statutory and actual damages." Compl., at ¶ 9.4. To the extent Plaintiffs seek

---

[6] The July 5, 2002 letter fails to state any reasons why Plaintiff Dennis Barnett believed his account was in error, while the July 19, 2002 letter fails to include any account identifying information. Compl., Exh. C, D. Defendants concede that the third letter sent on June 14, 2002 constitutes a "qualified written request." Id., Exh. B.

ORDER- 6

additional damages, the court finds that Wilshire's failure to respond to one qualified written request falls short of demonstrating a "pattern or practice of noncompliance" warranting additional damages.  E.g., In Re Maxwell, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) (failing to respond to one qualified request does not rise to a "pattern or practice"); In re Tomasevic, 273 B.R. 682, 686-87 (Bankr. M. D. Fla. 2002) (same).  Thus, Wilshire (and possibly Ocwen) is liable for any actual damages caused by its failure to respond to Plaintiff Dennis Barnett's June 14, 2002 letter.[7]

**F.    Fair Debt Collection Practices Act**

Plaintiffs' final claim alleges Wilshire violated the FDCPA by failing "to honor written requests for the verification of amounts owed" and utilizing "abusive collection tactics by instituting foreclosure proceedings when there was no default."[8]  Compl., at ¶ 8.2.  Wilshire correctly contends that Plaintiffs' FDCPA claim is time-barred by the statute of limitations which begins running "one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Here, the statute of limitations began running on January 7, 2003 – the last date Plaintiffs allege receiving a communication from Wilshire.[9]  Compl., at ¶ 3.19.  Thus, the statute of limitations on Plaintiffs' FDCPA claim expired on January 7, 2004, nearly 14 months before Plaintiffs filed their complaint.

## IV.   CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Defendants' motion to dismiss for judgment on the pleadings (Dkt. #23).  The only claims

---

[7] Ocwen's potential liability under RESPA is unclear given that Plaintiffs fail to allege any instances where they sought written clarification of their account from Ocwen.

[8] The court previously dismissed Plaintiffs' FDCPA claim against Ocwen at Plaintiffs' request. Order, Dkt. # 25 at 4.

[9] The court notes that Plaintiff William Barnett refinanced the loan and paid it off on February 24, 2004, thereby ending any relationship with Wilshire thirteen months prior to filing suit.

ORDER- 7

remaining in this action are Plaintiffs' RESPA claim against Wilshire and Ocwen, and their WCPA claim against T.D. Escrow.

Dated this 1st day of August, 2005.

_____
JAMES L. ROBART
United States District Judge

ORDER- 8